IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Domonique Patstone,[1]           )
                                 )
    Plaintiff,                   )
                                 )
v.                               ) No. 12 CV 50451
                                 ) Magistrate Judge Iain D. Johnston
Daniel Reilley, *et al.*,        )
                                 )
    Defendants.                  )

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court, based upon consent of the parties (Dkt. ##40, 41), is Defendants' Motion for Summary Judgment ("Motion") (Dkt. ##35, 36, 38, 43, 45). The Motion is granted for the following reasons.

## I. JURISDICTION AND VENUE

The claims in this matter are properly before this Court based upon federal question jurisdiction and supplemental jurisdiction. 28 U.S.C. §§1331, 1367. Despite the complete diversity of the parties and an amount in controversy of possibly exceeding $75,000, diversity jurisdiction is *not* alleged. 28 U.S.C. 1332.

The incident at issue in this matter occurred in Boone County, Illinois, which is located in the United States District Court for the Northern District of Illinois, Western Division. 28 U.S.C. §93. Accordingly, venue is proper in this Court.

## II. PARTIES AND CLAIMS

Domonique "Nick" Patstone ("Plaintiff") has sued the following defendants: Boone County Deputy Sheriffs Daniel Reilley, David Mordt, Kevin Smyth, Tim Oberholtzer, Boone County Sheriff Duane Wirth, and the County of Boone. Plaintiff's Amended Complaint alleges the following federal claims: unlawful search and seizure and unlawful arrest under the Fourth Amendment against the Deputy Sheriffs. Plaintiff's Amended Complaint alleges the following supplemental state-

---

[1] Originally, the plaintiff in the caption of the case was "Domonique Patstone, by his mother and legal guardian, Michelle L. Patstone." However, the undisputed evidence before the Court is that Domonique Patstone (who goes by "Nick") is an emancipated adult and has never been adjudicated as incompetent, and, moreover, Michelle Patstone has never been appointed his guardian. (Dkt. #33). Accordingly, pursuant to Federal Rule of Civil Procedure 21, Michelle Patstone is being dropped as a party. Fed. R. Civ. P. 21.

1

law claims: false imprisonment and battery against the Deputy Sheriffs, and indemnification against the County of Boone and Sheriff Wirth.

III. FACTS

The following facts are taken from Defendants' Local Rule 56.1(a) statements of facts ("SOF"). Pursuant to Local Rule 56.1, Defendants filed their SOF, identifying their undisputed material facts, supported by specific citations to exhibits, which were filed with the Motion. Plaintiff failed to file a response to Defendants' SOF and likewise failed to file his own statement of undisputed facts, pursuant to Local Rule 56.1(b). By operation of Local Rule 56.1, Defendants' SOF are deemed admitted and taken as true for purposes of deciding the Motion. The Seventh Circuit has consistently upheld the trial court's discretion to require strict compliance with Local Rule 56.1. *FTC v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). This Court will exercise its discretion in strictly enforcing Local Rule 56.1, and find that Defendants' SOF are admitted. *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010).

The Court does so for the following reasons. Sixteen years ago, the undersigned published *Summary Judgment Motions in the Northern District: The Importance of Local Rules 12M & 12N*, 12 CBA Record 24 (April 1998). (Local Rule 12M and 12N were the precursors to Local Rule 56.1(a) and 56.1(b). *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000).) At that time, there was substantial case law discussing local summary judgment rules, the purposes behind the rules and the drastic consequences resulting from the failure to follow those rules. Nothing has changed in any of these regards. There are numerous reported decisions discussing the Northern District's, as well as other districts', summary judgment rules. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cr. 1994). Likewise, the purposes of the rules remain the same; namely, to streamline summary judgment proceedings and to present the issues in an orderly fashion. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2010); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000). Moreover, the consequences of failing to comply with the local rules remain just as important today. Indeed, in 2000, Judge Castillo issued a primer on Local Rule 56.1. *See Malec*, 191 F.R.D. at 583-87. As Judge Castillo aptly wrote over a decade ago, "This rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire." *Id.* at 584.

Back in the stone age of the 1990s, the Northern District's summary judgment rules could be a trap for the unwary. For example, an out-of-district attorney who was appearing *pro hoc vice* might have been unfamiliar with the rule. Similarly, back then, a newly minted counsel may not have been exposed to the practice in law school. And even experienced attorneys were still required to physically obtain the local rules from the Clerk of Court's office or from the back of *Sullivan's*.

2

But those excuses no longer exist. Besides the fact that all members of the Northern District of Illinois should be aware of all the local rules, the world has changed. The local rules are now on the Court's website. All the Western Division judges' webpages state that the local summary judgment rules must be followed. In fact, on their respective webpages, the vast majority of the judges of the entire Northern District reference Local Rule 56.1, and many remind counsel of the severe consequences for failing to comply with those rules. Simply inputting "motion for summary judgment in the Northern District of Illinois" into any reliable search engine will provide a link to Local Rule 56.1 as the first result. If courts could require strict adherence to Local Rule 12M and 12N twenty years ago, they certainly can require strict adherence to Local Rule 56.1 today.

The Court has two final points in this regard. First, assuming counsel for the non-moving party was completely unfamiliar with Local Rule 56.1, upon receipt of the moving party's Local Rule 56.1 statement of facts, a prudent and reasonable counsel would investigate the stand-alone document referencing a local rule. Upon doing so, counsel would discover the import of the rule and its requirements. Second, upon receiving a reply brief that seeks strict enforcement of Local Rule 56.1, no attempt to remedy the error was made. *See* Johnston, *Summary Judgment Motions in the Northern District: The Importance of Local Rule 12M and 12N*, 24 CBA Record at 29 (addressing the three possible remedies discussed in *Schulz v. Serfilco Ltd.*, 965 F.2d 516, 520 (7th Cir. 1992)). Indeed, to allow time to rectify the oversight, the Court waited for a reasonable period following the filing of the reply brief before entering this Memorandum Opinion and Order.

Accordingly, the following are the facts taken from Defendants' Local Rule 56.1(a) SOF.

On December 17, 2010, Plaintiff was a resident of Greybull, Wyoming. He owned and drove a 1993 Subaru Legacy sedan that was registered in Wyoming. On December 17, 2010, Plaintiff left LaPorte, Indiana, where he had been visiting friends, and was returning to Wyoming. Traveling with Plaintiff that day were two acquaintances (Megan Gilchrist and Eric Hansen), who were travelling to Wyoming to "hang out" for a week or two. Also traveling in Plaintiff's vehicle was a substantial amount of marijuana – over 30 grams – a pipe and a grinder.

According to Plaintiff, he had been driving continuously from Indiana to Wisconsin, when he decided he did not have sufficient funds or gasoline to reach Wyoming. Consequently, Plaintiff decided to return to Indiana. Although the most direct route between Indiana and Wyoming is via Interstate Highway 90, according to Plaintiff, he did not want to pay tolls so he decided to take the back roads and rely on a portable satellite navigation system.

Meanwhile, Boone County Deputy Sheriff Daniel Reilley was working that night. According to Deputy Reilly, shortly before midnight, Plaintiff's vehicle was traveling south on Illinois Route 76, in Boone County, just north of Belvidere, Illinois. Unbeknownst to Plaintiff, Deputy Reilley was traveling behind Plaintiff's vehicle. According to Deputy Reilley, Plaintiff's vehicle was "swerving within its lane". Because Plaintiff was traveling on an unfamiliar, dark, rural highway, he

was using his car's high-beam lights.  Deputy Reilley noticed that as northbound traffic approached, an oncoming vehicle flashed its high-beam lights at Plaintiff's vehicle.  Deputy Reilley understood this to mean that the oncoming vehicle was signaling Plaintiff's vehicle that its high-beam lights were still on.  In response, Plaintiff reduced his vehicle's high-beam lights, while the vehicle passed.  However, as a second oncoming, northbound vehicle approached, that driver similarly flashed high-beam lights. But this time, Plaintiff's vehicle failed to reduce its high-beam lights.

Failing to reduce or dim one's high-beam lights at night as oncoming traffic approaches is just one of hundreds of violations identified in the Illinois Vehicle Code.  Specifically, Section 12-210 provides the following:  "Whenever the driver of any vehicle equipped with an electric driving head lamp, driving head lamps, auxiliary driving lamp or auxiliary driving lamps is within 500 feet of another vehicle approaching from the opposite direction, the driver shall dim or drop such head lamp or head lamps and shall extinguish all auxiliary driving lamps." 625 ILCS §5/12-210.

When Deputy Reilley activated his squad's emergency lights, Plaintiff stopped his vehicle.  Plaintiff was in the driver's seat; Hansen was in the passenger's seat and Gilchrist was asleep in the back seat.  The passenger compartment of Plaintiff's vehicle was cluttered with food wrappers, blankets and back packs.  Immediately upon being stopped, Plaintiff lit a cigar, which he shared with Hansen as Deputy Reilley approached. (Based on training and experience, Deputy Reilley believed that this was an effort to mask the smell of marijuana or alcohol.)  Deputy Reilley quickly exited his squad after the vehicles stopped.

When Deputy Reilley reached Plaintiff's vehicle, Plaintiff rolled his window down about three inches.  Deputy Reilley asked Plaintiff for the vehicle registration, Plaintiff's driver's license and proof of insurance.  Deputy Reilley asked Plaintiff if Plaintiff knew why he stopped Plaintiff.  Plaintiff replied that Deputy Reilley may have stopped him because he made a U-turn "a while back."  Deputy Reilley explained that he stopped Plaintiff for failing to dim his high-beam lights.  Plaintiff also explained his travel plans. During this time, according to Deputy Reilley he noticed that Plaintiff's eyes were bloodshot and his speech was slurred.  Deputy Reilley also noticed the condition of the passenger compartment of the vehicle.  Deputy Reilley also believed that the travel plans (namely, traveling from Indiana to Wyoming but returning upon realizing the insufficiency of funds and/or gas) were confusing.  At this point, Deputy Reilley believed he had reasonable suspicion that Plaintiff may have been operating his vehicle under the influence of drugs or alcohol.  Accordingly, Deputy Reilley placed a call to have Deputy Kevin Smyth, who was working DUI patrol that night and who was partnered with a drug detecting canine named Bosco, arrive at the scene.

Meanwhile, Deputy Tim Oberholtzer heard the initial traffic stop over the radio, and went to the scene to provide support for Deputy Reilley.  Deputy Oberholtzer parked immediately behind Deputy Reilley's vehicle.  Deputy Oberholtzer spoke with Deputy Reilley, and then approached Plaintiff's vehicle, and

asked Hansen where they were going and for identification. Like Deputy Reilley, Deputy Oberholtzer believed there was reasonable suspicion to conduct a canine "free air" sniff of Plaintiff's vehicle.

Along with his canine Bosco, Deputy Kevin Smyth arrived at the scene of the traffic stop. Deputy Reilley told Deputy Smyth the reason for the stop and what he had observed and had been told. Deputy Smyth asked Deputy Reilley to remove Plaintiff, Hansen and Gilchrist from the vehicle before he conducted the walk around. Deputy Smyth then retrieved Bosco from his vehicle, but before he could even start the walk around, Bosco alerted to the presence of drugs in the vehicle. Nevertheless, after praising Bosco, Deputy Smyth began the walk around in the usual manner, starting at the front of the vehicle. Again, Bosco altered to the presence of drugs in the same location of the vehicle. Deputy Smyth then opened the door and allowed Bosco into the vehicle, at which time Bosco began scratching on one of the backpacks.

Deputy Smyth went to the rear of the vehicle and asked for the identity of the owner. Plaintiff said he owned the vehicle. Deputy Smyth explained Bosco's actions and asked Plaintiff if there were any drugs in the vehicle. Although Plaintiff initially denied there were drugs in the vehicle, he quickly admitted that somebody had recently smoked medical marijuana in the vehicle.

A search of the vehicle discovered the marijuana in the backpack, a pipe and a grinder. Plaintiff was taken to the public safety building for processing, which was performed by Deputy David Mordt.

Deputies Reilley, Oberholtzer, Smyth and Mordt are all employees of Boone County and Boone County Sheriff Duane Wirth.

## IV. CONTENTIONS

Defendants make the following arguments in support of the Motion. As to the federal claims, they assert that the initial stopped was justified based upon the observed traffic offense. Thereafter, they assert that upon obtaining information as a result of the stop, the canine walk around was appropriately based upon reasonable suspicion. And once Bosco alerted to the presence of drugs in the vehicle, probable cause was established to search the vehicle, resulting in the recovery of the marijuana. Defendants (not including Boone County and Sheriff Wirth in his official capacity) also assert that they are entitled to qualified immunity. As to the supplemental state-law claims, Defendants contend that the Plaintiff's claims are time barred.

As to the federal claims, Plaintiff asserts that a genuine issue of material fact exists as to the basis for the stop; namely, whether he dimmed his high-beam lights, slurred his speech or had blood shot eyes. Accordingly, Plaintiff contends that summary judgment is inappropriate as to the initial stop and all actions taken thereafter. Plaintiff has not responded to Defendants' contention that the statute of limitations bars the supplemental state-law claims.

## V. ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be granted if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009). In making this determination, the non-movant is entitled to reasonable inferences drawn by the court, not every conceivable inference. *Gleason v. Mesirow Financial*, 118 F.3d 1134, 1139 (7th Cir. 1997). A dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, if a plaintiff has not put forward evidence to support every element of his claim, summary judgment should be granted. *Griffen v. Potter*, 356 F.3d 824, 828 (7th Cir. 2004); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And a fact is "material" if it would affect the outcome under the governing, substantive law at issue in the case. *Anderson*, 477 U.S. at 248.

### B. FEDERAL CLAIMS

#### 1. The Initial Stop Did Not Violate the Fourth Amendment.

A Fourth Amendment seizure occurs when a police officer restrains a person's freedom to move. *U.S. v. Mancillas*, 183 F.3d 682, 695 (7th Cir. 1999). The Fourth Amendment requires that seizures be reasonable. *U.S. v. Jennings*, 544 F.3d 815, 818 (7th Cir. 2008).

Officers have probable cause to stop a person when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect committed an offense. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007). Probable cause is a fluid concept based on common-sense interpretations of reasonable police officers as to the totality of the circumstances known at the time the events occurred. *U.S. v. Ellis*, 499 F.3d 686, 689 (7th Cir. 2007). Probable cause is an objective test; the Court asks whether a reasonable officer would have believed the person had committed a crime. *Williams*, 509 F.3d at 399. Subjective motivations are irrelevant under the Fourth Amendment, provided probable cause existed. *U.S. v. Burnside*, 588 F.3d 511, 517 (7th Cir. 2009).

When an officer reasonably believes that a driver committed even a minor traffic offense, probable cause exists to support the stop of the motorist. *U.S. v. Peters*, 743 F.3d 1113, 1116 (7th Cir. 2014); *Jones v. City of Elkhart*, 737 F.3d 1107, 1114 (7th Cir. 2013).

### 2. The Detention While Awaiting Deputy Smyth and Bosco Was Reasonable.

After a traffic stop, officers can detain motorists for a reasonable period of time to allow a canine to arrive at the scene to conduct a walk around of the vehicle (sometimes called a "free air sniff"). *U.S. v. Morgan*, 270 F.3d 625, 630-31 (8th Cir. 2001). A common factor used as a basis for reasonably detaining a motorist is bizarre travel plans. *U.S. v. White*, 584 F.3d 935, 951 (10th Cir. 2009). Moreover, blood-shot eyes and slurred speech are common factors courts find support probable cause that a motorist is driving while impaired. *People v. Lindmark*, 887 N.E.2d 606, 624 (4th Dist. 2008); *see also Jones*, 737 F.3d at 1115.

The facts presented to Deputies Reilley and Obertholtzer were the following: Plaintiff immediately lighting a cigar and sharing it with Hansen when stopped; Plaintiff only rolled his window down about three inches; Plaintiff's travel plans were "confusing;" and Plaintiff had blood-shot eyes and slurred speech. These facts were sufficient to briefly detain Plaintiff and the vehicle while Deputy Smyth and Bosco arrived.[2]

### 3. Bosco's "Free Air Sniff" of Plaintiff's Vehicle Did Not Implicate the Fourth Amendment.

Plaintiff's claim, if it even is a claim, that Bosco's free air sniff of Plaintiff's vehicle was a violation of the Fourth Amendment is without merit. Nearly a decade ago, the Supreme Court held that these activities did not even implicate the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

### 4. The Search of Plaintiff's Vehicle Did Not Violate the Fourth Amendment.

To the extent that Plaintiff challenges the search of the vehicle after Bosco alerted to the presence of drugs, that claim lacks merit. It is well established that once a trained canine alerts to the presence of drugs in a vehicle, probable cause exists to search the vehicle. *U.S. v. Bueno*, 703 F.3d 1053, 1064 (7th Cir. 2013) *vacated and remanded on other grounds*, 133 S.Ct. 2830 (2013). There is no dispute as to Bosco's qualifications or that the canine alerted to the presence of drugs in Plaintiff's vehicle.

---

[2] To the extent that Deputy Reilley relied upon fast food wrappers in the vehicle, he should not have done so, as courts have routinely found that these items do not factor into reasonable suspicion or probable cause. *See U.S. v. Smith*, 263 F.3d 571, 593-94 (6th Cir. 2001).

5. The Actions of Deputies Oberholtzer, Smyth and Mordt Were Protected by The Collective Knowledge Doctrine and Qualified Immunity.

Deputies Oberholtzer, Smyth and Mordt relied upon information provided to them by Deputy Reilley. Under the "collective knowledge doctrine," these individuals are entitled to summary judgment as they are allowed to reasonably rely upon information provided by other officers. *Reynolds v. Jamison*, 488 F.3d 756, 768 (7th Cir. 2007); *Chavez v. Illinois State Police*, 27 F. Supp. 2d 1053, 1072-74 (N.D. Ill. 1998) (discussing both doctrines in detail under similar circumstances) *aff'd* 251 F.3d 612 (7th Cir. 2001). To the extent that Plaintiff is asserting that if the stop was unlawful (which it was not), then the remaining actions are improper, Plaintiff's assertion seems to be based on the "fruit-of-the-poisonous-tree" doctrine. This doctrine has no application in the civil context under Section 1983. *See Medlock v. Trustees of Indiana University*, 738 F.3d 867, 871 (7th Cir. 2013). Finally, it must be noted that Deputy Mordt only processed Plaintiff; he had no personal involvement in the stop, detention and search of Plaintiff. Deputy Mordt's lack of involvement entitles him to summary judgment. *Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) (lack of personal involvement results in summary judgment).

C. SUPPLEMENTAL STATE-LAW CLAIMS

As an initial matter, Plaintiff's response to the Motion fails to contest that his supplemental state-law claims are time barred. By failing to contest this argument, Plaintiff has forfeited these claims. *See Wojtas v. Capital Guard Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) ("The Wojtases' failure to offer any opposition to Capital's statute of limitations argument constitutes waiver."). Nevertheless, as explained below, the Court will address the statute of limitations argument.

After a federal court dismisses all federal claims, the court has the discretion to either dismiss the supplemental state-law claims so they can be filed in circuit court or rule on the merits of those claims. *Nelson v. Welch*, 601 F.3d 710, 724-25 (7th Cir. 2010). Here, because Defendants have moved on the merits of those claims and the dispositive issue is clear and routine, the Court exercises its discretion to rule on the merits as to Counts III – V. *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (court can address statute of limitations issue even when federal claim already dismissed); *see also Hansen v. Board of Trustees*, 551 F.3d 599, 608-09 (7th Cir. 2008) (enumerating considerations as to when district court should exercise its discretion to rule on supplemental state-law claims).

The stop, search and arrest of Plaintiff occurred on December 17 and 18, 2010. Defendants are all local governmental parties, either as a local governmental unit, a local governmental elected official or local governmental employees. Accordingly, the statute of limitations for the supplemental state-law claims is provided by the Illinois Local Governmental and Governmental Employees Tort

8

Immunity Act, 745 ILCS 10/1-101. That statute of limitations is one-year. 745 ILCS 10/8-101(a). In this case, the Complaint was filed on December 17, 2012, nearly two years after the actions giving rise to the claims. (Dkt. #1) Accordingly, the supplemental state-law claims are time barred. *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005). Summary judgment is entered as to Counts III and IV.

Because no claims remain against any of the Deputy Sheriffs, Count V is also barred and summary judgment is entered as to that count as well. 745 ILCS §10/2-109.

## VI. CONCLUSION

The Defendants' Motion is granted, and the case is dismissed. Judgment is entered in favor of Defendants.

September 2, 2014        Entered: _____
                                                                  Honorable Iain D. Johnston
                                                                  U.S. Magistrate Judge